# UNITED STATES DISTRICT COURT

NORTHERN   DISTRICT OF   ILLINOIS, EASTERN DIVISION

UNITED STATES OF AMERICA

v.

JEAN C. HELINSKI

FILED
NOV 27 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

07CR 778

CRIMINAL COMPLAINT

MAGISTRATE JUDGE COLE

CASE NUMBER:

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 25, 2007, in Cook County, in the Northern District of Illinois, defendant herein,

> knowingly and intentionally possessed with intent to distribute a controlled substance, namely, 500 grams or more of a mixture and substance containing cocaine, a Schedule II Narcotic Drug Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1).

I further state that I am a Task Force Officer, U.S. Immigration and Customs Enforcement, and that this complaint is based on the following facts:

> See attached Affidavit.

Continued on the attached sheet and made a part hereof:  X  Yes  __ No

_____
Mark Benaitis, TFO, ICE
Signature of Complainant

Sworn to before me and subscribed in my presence,

November 27, 2007                                  at      Chicago, Illinois
Date                                                       City and State

Jeffrey Cole, U.S. Magistrate Judge                        _____
Name & Title of Judicial Officer                           Signature of Judicial Officer

| | |
|---|---|
| STATE OF ILLINOIS | ) |
|  | ) SS |
| COUNTY OF COOK | ) |

## AFFIDAVIT

I, Mark Benaitis, being duly sworn on oath, state as follows:

1. I am a Hickory Hills Police Officer and have been so employed for ten years. I am I am a Hickory Hills Police Officer and have been so employed for ten years. I am currently assigned as a Task Force Officer with the Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Resident Agent in Charge O'Hare Field Office, and have been so assigned for the past fifteen months. In connection with my official duties, I investigate criminal violations of the federal narcotics laws, including, but not limited to, possession with intent to distribute and distribution of narcotics. As part of my responsibilities, I investigate offenses related to the trafficking of controlled substances. I have also been involved in various types of electronic surveillance, and in the debriefing of defendants, witnesses and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from drug trafficking.

2. This affidavit is submitted for the limited purpose of establishing probable cause that, on or about November 25, 2007, Jean C. HELINSKI knowingly and intentionally possessed with intent to distribute a controlled substance, namely, 500 grams of more of a mixture and substance containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1). The facts set forth herein are based on my personal knowledge or information provided to me by other ICE agents and other law enforcement officials. It contains only a summary of the facts and is not intended to

1

be a detailed account of everything known about the individuals and events described herein.

3. On November 14, 2007, Jean C. HELINSKI arrived at Chicago O'Hare International Airport ("O'Hare"), via British Airways flight 297, from London, England. HELINSKI's travel originated in Nairobi, Kenya. While passing through Customs at O'Hare, HELINSKI was referred for a secondary examination, conducted by Customs and Boarder Protection ("CBP") officers. During the examination, CBP officers discovered that HELINSKI's airline ticket was purchased with cash by a third party the day prior to HELINSKI's departure from Nairobi. HELINSKI was carrying two checked bags and one carry-on bag. CBP officers searched HELINSKI's luggage, but did not find any contraband.

4. When interviewed during the random secondary examination, HELINSKI stated, among other things, that he planned to stay at the Patio Motel, located at 6250 N. Lincoln Avenue, Chicago IL. HELINSKI also stated that he had previously traveled to Chicago in October, and had stayed the Patio Motel during that trip. CBP officers confirmed through Customs records that HELINSKI had previously traveled to Chicago from October 14, 2007 to October 23, 2007. HELINSKI was released from the secondary examination and permitted to continue his travel into Chicago, IL.

5. On November 16, 2007, ICE agents established surveillance on HELINSKI and the area of the Patio Motel. Between the dates of November 16, 2007 and November 24, 2007 ICE agents observed HELINSKI taking short walks to shop at retail and liquor stores.

6. On November 25, 2007, ICE agents maintained surveillance on HELINSKI. At approximately 4:08 pm, HELINSKI exited the Patio Motel carrying a shoulder bag, a red duffel bag, and two gift bags. HELINSKI walked to the Via Venuto restaurant, located approximately one half

block away from the Patio Motel, and went inside. At approximately 5:54 pm, HELINSKI left Via Venuto and walked to the Shell gas station at the corner of Devon and Lincoln Avenue, Chicago IL, located approximately one block away from the Patio Motel.

7. At approximately 5:58 pm, HELINSKI met with Individual A after Individual A parked her/his vehicle at the Shell gas station. Individual A placed HELINSKI's bags in the trunk of the vehicle. Individual A then drove HELINSKI to the parking lot of a Walgreens pharmacy, located at the intersection of Nagle and Milwaukee, Chicago IL. Individual A and HELINSKI exited and walked to the rear of the vehicle. Individual A opened the trunk of the vehicle, removed a back roller suitcase from the trunk, unzipped the bag, and Individual A appeared to be examining the contents of the bag. After approximately ten minutes, both Individual A and HELINSKI entered the vehicle and drove away.

8. At approximately 6:38 pm, Individual A and HELINSKI arrived at Terminal Five departures area of O'Hare. HELINSKI exited Individual A's vehicle and entered Terminal Five, carrying the shoulder bag, red duffle bag, and two black roller suitcases, which he removed from the trunk of Individual A's vehicle. Individual A then drove away from O'Hare.

9. Once inside Terminal Five, ICE agents observed HELINSKI kneel down on the floor. HELINSKI then appeared to examine the contents of all luggage under his control. HELINSKI then checked in for British Airways flight 298 to London Heathrow, at the British Airways desk. HELINSKI checked the two black roller suitcases as checked luggage, and left the desk area.

10. After HELINSKI checked the two black roller suitcases, officers from the CBP Outbound Inspection Team and an ICE Agent conducted an examination of HELINSKI's bags. The CBP Outbound Team was accompanied by a narcotics canine. The canine positively alerted to HELINSKI's luggage. The luggage was subsequently removed to the CBP secondary area for

further examination. Upon inspection of the larger black roller suitcase, officers discovered several white plastic shopping bags containing a total of 9 plastic bottles of baby powder and 2 canisters of protein powder mix. Each of the 11 containers contained a single plastic bag filled with a white powdery substance that field tested positive for cocaine. The combined gross weight of all the containers and the suspect cocaine contained therein was 9013.9 grams.

11. After HELINSKI checked in for his flight, ICE agents observed HELINSKI pass the security checkpoint, and then drink three alcoholic beverages. HELINSKI then proceeded to the gate from where his flight was scheduled to depart.

12. After discovering the suspect cocaine, officers approached HELINSKI as he attempted to board British Airways flight 298. Officers detected alcohol on HELINSKI's breath, and asked whether the two black roller suitcases were HELINSKI's, and whether the suitcases were in his possession at all times before he checked in at the British Airways counter. HELINSKI responded affirmatively and was arrested.

13. Agents advised HELINSKI of his Miranda rights, and HELISNKI executed a written waiver of those rights. HELINSKI stated, among other things, that he had previously traveled to Chicago in October 2007. During the October 2007 trip to Chicago, HELINSKI was given one suitcase by Individual A, which HELINSKI transported back to London. Upon arriving in London, HELINSKI stated that he gave the suitcase to an unknown individual.

14. On November 26, 2007, ICE agents readvised HELINSKI of his Miranda rights, and HELINSKI again executed a written waiver of those rights. HELINSKI reiterated the information he provided about his October 2007 trip to Chicago. HELINSKI further stated that he suspected that the purpose of his October 2007 trip to Chicago was to transport narcotics internationally. HELISNKI also stated that he knew the purpose of the current trip was for HELINSKI to transport

4

narcotics internationally. Specifically, when HELINSKI inspected his luggage before checking in for British Airways flight 298, HELINSKI knew that the large black roller suitcase contained narcotics, because it was much heavier than the suitcase he received from Individual A during his October 2007 trip to Chicago. Although HELINSKI knew that he had been given narcotics to transport internationally, he was not sure of the type or quantity of narcotics.

15.   Based upon the facts set forth in this affidavit, I respectfully suggest there is probable cause to believe that Jean C. HELINSKI knowingly and intentionally possessed with intent to distribute 500 grams of more of a mixture and substance containing cocaine in violation of Title 21, United States Code, Section 841(a)(1).

**FURTHER AFFIANT SAYETH NOT**

Mark Benaitis
Task Force Officer
U.S. Immigration and Customs Enforcement


Subscribed and sworn
Before me this 27th day of November, 2007

JEFFREY COLE
Magistrate Judge

5